UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Chace A. Felix,

    Plaintiff,

    v.                                  Civil Action No. 2:15-cv-149

Northwest State Correctional Facility
and John and Jane Doe,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 12)

Plaintiff Chace A. Felix, proceeding *pro se*, brings this action under 42 U.S.C. § 1983, alleging that he was sexually assaulted on multiple occasions by inmate "Jeffrey Goldberg" while they were both confined at the Northwest State Correctional Facility (NWSCF), and that correctional officers "John and Jane Doe" allowed the assault to continue by placing Goldberg back into Felix's unit after the initial assault occurred. (Doc. 5 at 3.) Felix claims the conduct of Defendants NWSCF and John and Jane Doe "was clearly cruel and unusual punishment." (*Id.*) Felix seeks $4 million in damages for his "pain and suffering" while he was incarcerated and since he was released; for the physical damage to his body, including a "stress rash" and "scarring"; for his "increased anxiety and depression"; for the mental health treatment and medication he will require in the future due to his "mental disabilities" caused by Defendants' acts; for the future damage to his liver

caused by the medication prescribed to treat his mental health problems; and for the reduced "future income" he will earn because of his mental health problems. (*Id.* at 3, 10.)

Felix filed his Complaint on July 1, 2015. Presently before the court is NWSCF's Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 12.) Therein, NWSCF makes the following arguments: (1) Felix's claims should be dismissed because Felix failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (*id.* at 4); (2) Felix's claims are barred by the doctrine of sovereign immunity under the Eleventh Amendment to the United States Constitution (*id.* at 8); and (3) Felix's claims fail because NWSCF is not a "person" under § 1983 (*id.* at 9). The deadline for filing a response to NWSCF's Motion has expired, and Felix has not filed a response.

For the reasons stated below, I recommend that NWSCF's Motion to Dismiss Felix's claims (Doc. 12) be GRANTED; Felix's claims against Defendants John and Jane Doe be DISMISSED; and Felix be granted leave to amend his Complaint.

## **Background**

For purposes of deciding NWSCF's Motion to Dismiss, the court accepts as true the factual allegations contained in the Complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and views those facts "'in the light most favorable'" to Felix, *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chase Group Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 148 (2d Cir. 2010)).

During the relevant period, Felix was incarcerated at NWSCF in Swanton, Vermont. (Doc. 5 at 3.) He claims he was sexually assaulted by another inmate, Jeffrey Goldberg, on two occasions: first, on approximately April 16, 2015; and then again, roughly a month later, on approximately May 17, 2015. (*Id.* at 5, 7.)

More specifically, Felix asserts that, on April 16, 2015, Goldberg sexually assaulted Felix by exposing his genitalia and making lewd gestures towards Felix. (*Id.* at 5.) Soon after, Goldberg repeated these actions in the bathroom/shower. (*Id.*) Too afraid to notify the correctional officers of Goldberg's conduct, Felix wrote to his mother about it. (*Id.*) Correctional officers read the letter, however, and "S1 Bailey" called Felix "down to the office" to discuss its contents. (*Id.*) Felix told Bailey that he did not want Goldberg or anyone else to know that he had told anyone about Goldberg's actions. (*Id.*) Thereafter, Bailey told Goldberg what Felix reported, and Goldberg was placed in "the hole." (*Id.*)

Felix then became fearful that other inmates would similarly expose their genitalia to him. (*Id.*) He felt distressed, alone, and claustrophobic, "living in constant fear." (*Id.*) His sleep and appetite were affected, and he began to lose weight. (*Id.*) When other inmates at NWSCF learned that Felix was a "rat," his stress increased, and he developed a "stress rash." (*Id.*) The rash was extremely painful and caused him to constantly itch and scratch, leading to scarring "throughout [his] body," even after he was prescribed hydrocortisone cream. (*Id.*)

The second period of sexual harassment occurred leading up to and on May 17, 2015. (*Id.* at 6, 7.) After Goldberg was released from segregation, he was placed back in Felix's "unit," which caused Felix "extreme distress and anxiety." (*Id.* at 6.) About a week later,

3

Goldberg began "tormenting" Felix again—winking at him, making vulgar motions toward him, calling him a "rat," staring at him, sitting next to him, taunting him, and threatening to sexually assault him. (*Id.*) Soon thereafter, Goldberg began exposing his genitalia to Felix again (*id.*); and on May 17, 2015, Goldberg made vulgar motions towards Felix, said he "was going to have sex with [Felix]," and otherwise attempted to "sexual[ly] torment" Felix (*id.* at 7). On the same date, Goldberg entered Felix's room, tried to pull Felix down from his bed, and exhibited lewd behavior and made sexual comments towards Felix. (*Id.*) Knowing Goldberg was about to leave the NWSCF facility, Felix wrote a letter to the facility superintendent, "Mr[.] Hale," reporting Goldberg's conduct. (*Id.*) On the next day, May 18, 2015, Hale read the letter and forwarded it to "S1 Broulette," prompting a meeting with Felix to discuss the letter's contents. (*Id.*) Felix then met with "the facility investigator" in the "hearing room," and informed him of the above incidents. (*Id.*) Subsequently, Felix was "referred . . . to mental health . . . [to] mak[e] sure [he] was ok" and not suicidal. (*Id.*) Felix reported that he was "not ok" but also was not suicidal. (*Id.*)

As a result of these incidents, Felix was fearful of "every new inmate" who entered NWSCF. (*Id.*) Moreover, Felix felt he could not trust the staff at NWSCF, given that they "lost" a letter he had written to his mother which described Goldberg's egregious conduct and thus was "the core" "piece of evidence" in this case. (*Id.* at 8.) Defendants' conduct caused Felix to have "extreme paranoia" and "immense distress," resulting in him "f[a]ll[ing] into a deep depression" and "forcing [him] to live in constant pain and suffering, with literally no[]where to turn." (*Id.*)

4

On July 1, 2015, Felix filed his Complaint against NWSCF and John and Jane Doe. (Doc. 5.) Of note, Felix states in the Complaint that, although a prisoner grievance procedure exists at NWSCF, he did not present the facts alleged in the Complaint through that procedure because he feared "segr[e]gation," "being treated different[ly]," and "the situation getting even worse." (*Id.* at 2.)

On October 9, 2015, NWSCF filed the pending Motion to Dismiss Felix's Complaint (Doc. 12), which includes an exhibit indicating that Felix is no longer incarcerated at NWSCF and has been sentenced to home confinement since July 1, 2015 (Doc. 12-1 at 7). Felix did not respond to the Motion. He has made no effort to inform the court of his current address, in violation of Local Rule 11(c). L.R. 11(c). The court has utilized a Winooski residential address that also was supplied by counsel for Defendant. On January 19, 2016, Felix failed to appear for the oral argument on Defendant's Motion. (Doc. 15.) At the hearing, defense counsel represented to the court that counsel had served Felix by U.S. mail at the Winooski address, but had not received any response or other communications from Felix. The Motion was taken under advisement. (*Id.*)

## Analysis

### I.     Rules 12(b)(1) and 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a case "for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d. Cir. 2000). When a party moves to dismiss a case pursuant to Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or

5

both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). "If 'the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations,' 'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Id.* (first quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); then quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). Furthermore, when ruling on a 12(b)(1) motion to dismiss, a court "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

Under Federal Rule of Civil Procedure 12(b)(6), a party also may move to dismiss a case for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

A plausibility determination is guided by two principles. *See Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Turkmen*,

6

789 F.3d at 233 (quoting *Iqbal*, 556 U.S. at 678).  Second, in order to survive a motion to dismiss, the complaint must state "a plausible claim for relief."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd*, 556 U.S. 662 (2009)).

Where, as here, the complaint is filed *pro se*, it "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  When parties seek dismissal of *pro se* complaints, "courts 'apply[ ] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.'"  *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013) (alteration in original) (quoting *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000)).  Despite this liberal construction, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief."  *Hogan*, 738 F.3d at 515.

**II.     Section 1983**

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). A claim brought pursuant to § 1983 "has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thompson*, 949 F. Supp. 2d at 569 (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)). Additionally, a claimant may only bring suit against a "person" within the meaning of § 1983. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 662 (1978) (considering "[w]hether local governmental officials and/or local independent school boards are 'persons' within the meaning of 42 U.S.C. § 1983").

### III. Prison Litigation Reform Act

#### A. Exhaustion

NWSCF argues that Felix's claim is barred by the PLRA "because he failed to exhaust his administrative remedies." (Doc. 12 at 4.) NWSCF points out that, as stated above, the Complaint states that NWSCF "has a grievance procedure process" that "was available to [Felix]," but Felix did not present his claims through that process. (*Id.* at 6.)

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Hernández v. Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (alterations in original) (quoting 42 U.S.C. § 1997e(a)). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006)). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (per curiam) (alteration in original) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 85. In *Woodford*, the Supreme Court held that "the PLRA

9

exhaustion requirement requires *proper* exhaustion." *Id.* at 93 (emphasis added). "That is, 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Johnson*, 680 F.3d at 238 (quoting *Jones*, 549 U.S. at 218).

The Vermont Department of Corrections (DOC)'s website indicates that the DOC maintains the following detailed procedures, among others, regarding inmate grievances:

> **4. Informal Resolution of Complaints**
>
> With the exception of grievances that are emergency in nature (see section 2a above) or that allege serious employee misconduct (see section 3 above), the staff and offender must make an attempt at informal problem resolution prior to the filing of formal grievance. An identifiable solution or plan to resolve the complaint shall be agreed on by the staff and offender within 48 hours of the complaint being identified. If no plan can be agreed on, the complaint will move to a formal grievance if desired by the offender. In these situations the Department will ensure that informal resolutions are agreed on in writing by the offender.
>
> **5. Departmental Timeframes**
>
> With the exception of grievances that allege staff misconduct or criminal activity (see section 3 above)[,] all grievances investigated by the Department of Corrections will adhere to the following timelines.
>
> a. <u>Informal Complaints:</u> Offenders must file an informal complaint immediately and not to exceed 10 business days after the event or discovery of the cause of the complaint.
>
> b. <u>Formal Grievance:</u> If the offender chooses, a grievance may be filed within 14 business days of the outcome of the informal resolution process being communicated to the offender unless it is clearly demonstrated by the offender that it was not feasible to file within such a period.
>
> c. <u>Emergency Grievances:</u> Emergency grievances will be reviewed by the chain of command immediately and responded to within 8 hours of receipt. The entire timeline for an emergency grievance will not exceed 10 calendar days. . . .

> d. <u>Standard Grievances:</u> The response for a standard grievance will not exceed 20 business days. . . .
>
> e. <u>Appeals by the Offender:</u> If the offender chooses to appeal a local grievance response, the offender must file an appeal within 10 business days of the receipt of a decision by the local chain of command. Responses to appeals will not exceed the following timeframes:
>   - Appeal to the Commissioner will be responded to within 20 business days.
>     - Appeals to the Commissioner involving Emergency Grievances will be screened for expedited response as needed.

Vt. Dep't of Corrs., *Final Adopted Administrative Rule #06006, Effective March 15, 2006, Offender Grievance System* (2006), http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/301-335-facilities-general/320%20Grievance%20System%20Rule.pdf; *see also* Vt. Dep't of Corrs., *Offender Grievance System for Field and Facilities* (2007), http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-550/301-335-facilities-general/320.01.pdf.[1]  As stated above, Felix admits that NWSCF has a prisoner grievance procedure but states that he did not follow it. (*See* Doc. 5 at 2.)  Accordingly, Felix failed to exhaust his administrative remedies.

However, before concluding that Felix's claims are barred under the PLRA, the court must evaluate whether he alleges any valid excuse for his failure to exhaust his administrative remedies.  In the Second Circuit, courts excuse the failure to exhaust under the PLRA when:

---

[1] The court may take judicial notice of the DOC procedures. *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (taking judicial notice of state prison rules and regulations).

11

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).[2]

None of these exceptions apply here. First, the Complaint explicitly states that a grievance process was available to Felix, but he chose not to follow it. Second, NWSCF has not waived the non-exhaustion defense and is not estopped from presenting it here. Third, though Felix alleges that he did not pursue the prison grievance procedure because he feared "segr[e]gation," "being treated different[ly]," and "the situation getting even worse" (Doc. 5 at 2), these reasons do not constitute "special circumstances" under *Hemphill*. "The inquiry with respect to special circumstances is . . . 'whether a similarly situated individual of ordinary firmness would have been deterred from following regular procedures.'" *Smith v. City of New York*, No. 12 Civ. 3303(CM), 2013 WL 5434144, at *8 (S.D.N.Y. Sept. 26, 2013) (quoting *Hemphill*, 380 F.3d at 690). Recognized special circumstances include, for example, misunderstanding the relevant grievance procedures and being threatened with retaliation if a grievance is filed. *Id.* Felix alleges neither of these circumstances. Thus, his claims against NWSCF are barred by the PLRA, and it is recommended that they be DISMISSED.

---

[2] The Second Circuit has questioned whether the doctrines of estoppel and special circumstances have survived, following the Supreme Court's decision in *Woodford*, but has ultimately "decline[d] to reach the issue" and continued to follow the three-prong approach set forth in *Hemphill* and *Ruggiero* and stated herein. *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011); *Ruggiero*, 467 F.3d at 176 ("We need not determine what effect *Woodford* has on our case law in this area . . . because [the plaintiff] could not have prevailed even under our pre-*Woodford* case law," i.e., using estoppel and special circumstances arguments).

### B. Physical Injury

Although NWSCF did not argue for dismissal based on Felix's failure to allege a physical injury, I address the PLRA's physical-injury requirement here.

Under the PLRA, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Espinal v. Goord*, No. 00 Civ. 2242(AJP), 2001 WL 476070, at *12 (S.D.N.Y. May 7, 2001) (quoting 42 U.S.C. § 1997e(e)).  Thus, "recovery for emotional injury" is tied "to the existence of a corresponding physical injury." *Id.*  As one court has noted, "numerous courts have held . . . that physical manifestations of emotional injuries (e.g., anxiety, depression, stress, nausea, hyperventilation, headaches, insomnia, dizziness, appetite loss, weight loss, etc.) are not 'physical injuries' for purposes of the PLRA." *McCloud v. Tureglio*, No. 9:07-CV-0650, 2008 WL 1772305, at *9 (N.D.N.Y. Apr. 15, 2008) (collecting cases).

Felix alleges that anxiety and stress caused a "stress rash" on his body. (Doc. 5 at 5, 10.)  However, as a physical manifestation of Felix's "emotional injuries," the rash is not considered a "physical injury" under the PLRA.  Moreover, Felix's other alleged physical injuries—i.e., future liver damage and potential skin grafts—are speculative and also do not satisfy the PLRA's physical-injury requirement.  Accordingly, I recommend DISMISSAL of Felix's claims sua sponte on this ground as well.  *See Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim, so long as the plaintiff is given notice and an opportunity to be heard." (internal quotation marks omitted)).

## IV.    Eleventh Amendment Immunity

Next, NWSCF argues that, even if Felix's claims are not barred by the PLRA, his claims against NWSCF for money damages are barred by the Eleventh Amendment. (Doc. 12 at 8.)  As discussed below, I agree.

The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court."  *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  The immunity extends to government entities such as "'state agents and state instrumentalities' that are, effectively, arms of a state."  *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  As a state correctional facility, NWSCF meets this definition.  *See Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 340 (N.D.N.Y. 2000) (concluding that a correctional facility is an "arm[] of the state").

There are two exceptions to Eleventh Amendment immunity: a state can waive its immunity to suit, or Congress can abrogate the immunity by statute.  *Mich. Dep't of State Police*, 491 U.S. at 66 ("The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citation omitted)).  Neither exception applies here.  First, the State of Vermont has not waived its immunity.  *See Thompson*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Vermont has not waived its sovereign immunity under § 1983." (citing Vt. Stat. Ann. tit 12, § 5601(g))).  And second, Congress has not abrogated Vermont's immunity by statute.  *See Muhammad v. Gold*, No. 1:05–CV–146,

14

2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983."); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("By contrast, § 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."). Thus, Felix's claims for money damages against NWSCF are barred by NWSCF's immunity under the Eleventh Amendment, and it is recommended that these claims be DISMISSED.[3]

## V.     "Person" Under § 1983

Lastly, NWSCF argues that Felix's claims are barred because NWSCF is not a "person" under 42 U.S.C. § 1983. (Doc. 12 at 9.)

Under 42 U.S.C. § 1983, only a "person" within the meaning of the statute can be sued. *See Mich. Dep't of State Police*, 491 U.S. at 71; *Monell*, 436 U.S. at 662. A plaintiff

---

[3] NWSCF moves for dismissal based on Eleventh Amendment immunity pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 12 at 8.) "[W]ithin the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved." *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014); *see also Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998))); *Jude v. New York State*, No. 07 Civ. 5890(RJS), 2009 WL 928134, at *1 n.2 (S.D.N.Y. Mar. 30, 2009) ("Although Defendants invoke Rule 12(b)(1) as the basis for their sovereign immunity defense, it is unclear whether a motion to dismiss on Eleventh Amendment grounds is properly raised as a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1), or a challenge to the legal sufficiency of the Amended Complaint under Rule 12(b)(6)."). Accordingly, I acknowledge this "open question" and recommend granting dismissal on the grounds of sovereign immunity pursuant to 12(b)(1).

15

must claim that any deprivation of his constitutional rights was "'committed by a *person* acting under color of state law.'"  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (emphasis added) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  Neither states nor state agencies are considered "persons" under § 1983.  *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998).  Moreover, "[n]either a Department of Correction nor a correctional institution is a 'person' within the meaning of § 1983."  *Santos v. Conn. Dep't of Corr.*, No. 3:04CV1562(JCH)(HBF), 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005).

Given that NWSCF is a correctional institution and thus not a "person" under § 1983, it is recommended that Felix's claims against it be DISMISSED.

## VI.     John and Jane Doe

As noted, Felix lists "John and Jane Doe" as Defendants in his Complaint, along with NWSCF.  (Doc. 5 at 1.)  The Complaint references "John and Jane [D]oe" only one time, however, stating: "I am not sure who authorized [Goldberg] [to be] placed back in my unit[;] hen[c]e the 'Jane and John Doe.'"[4]  (Doc. 5 at 3.)

"Generally, when a *pro se* plaintiff includes a 'Doe' defendant along with named defendants, the complaint is served upon the named defendants, and the plaintiff pursues discovery to identify the Doe defendant."  *Reed v. Doe No. 1*, No. 9:11–CV–0250, 2013 WL 5441503, at *8 (N.D.N.Y. Sept. 27, 2013) (citing *Peralta v. Doe*, No. 04-CV-6559P, 2005 WL 357358, at *2 (W.D.N.Y. Jan. 24, 2005)); *see also Murphy v. Goord*, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006) ("[C]ourts have recognized that situations arise

---

[4] Plaintiff also asserts that he "could not trust any of the staff [at NWSCF] because it seemed the higher up it went, the more corrupt and more twisted things [were]."  (Doc. 5 at 8.)  These assertions do not appear to concern "John and Jane Doe."  (*Id.* at 3.)

16

in which the identity of alleged defendants may not be known prior to the filing of a complaint. In such situations, the plaintiff should have an opportunity to pursue discovery to identify the unknown defendants." (quoting *Covington v. Warden of C–95*, No. 93 CV 1958 (FB), 1996 WL 75211, at *4 (E.D.N.Y. Feb. 8, 1996))). District courts have been instructed to "provide incarcerated *pro se* litigants with reasonable assistance in investigating the identity of such 'John Doe' defendants." *McKoy v. Suffolk Cty. Corr.*, No. 14–CV–0249 (JS)(AKT), 2014 WL 824516, at *3 (E.D.N.Y. Mar. 3, 2014) (citing *Valentin v. Dinkins*, 121 F.3d 72, 75–76 (2d Cir. 1997) (per curiam)); *see also Valentin*, 121 F.3d at 76 ("The district court may pursue any course that it deems appropriate to a further inquiry into the identity of [an officer].").

Notwithstanding, courts may dismiss claims against Doe defendants sua sponte where the plaintiff fails to meet the pleading standard. *See Melendez v. Nassau County*, No. 10–CV–2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010); *Hanks v. Doe*, No. 5:09-CV-1109 (NPM/GHL), 2010 WL 2516801, at *4 n.4 (N.D.N.Y. May 18, 2010), *adopted*, No. 5:09-CV-1109, 2010 WL 2516685 (N.D.N.Y. June 14, 2010). For instance, in *Melendez*, the court dismissed claims against two Jane Doe defendants because, although they were listed in the complaint's caption, the complaint provided "no factual basis for their involvement" in the relevant facts. 2010 WL 3748743, at *5. The court stated: "Without any factual allegations[,] these [Doe] Defendants are not put on fair notice of the claims being brought against them." *Id.*; *but see Fanelli v. New York*, 51 F. Supp. 3d 219, 234–35 (E.D.N.Y. 2014) (distinguishing *Melendez*, where complaint "detail[ed] the involvement of the 'John Doe' and 'Jane Doe' Defendants").

Here, Felix has failed to provide a factual basis for any claims against "John and Jane Doe," including claims brought under the Eighth Amendment for "cruel and unusual punishment." (*See* Doc. 5 at 3 ("[T]his was clearly cruel and unusual punishment.").) "The Eighth Amendment's prohibition on the infliction of cruel and unusual punishments imposes duties on prison officials, who must provide 'humane conditions of confinement,' including taking 'reasonable measures to guarantee the safety of the inmates.'" *Cruz v. Hillman*, No. 01 CIV. 4169 DABDF, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). In order to state a claim under the Eighth Amendment, "a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively 'sufficiently culpable state of mind.' Second, he must allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 20 (1992)). Under the second prong, "fear of an assault is insufficient to state a claim for an Eighth Amendment violation." *Cooper v. City of New York*, No. 13–cv–7590 (PKC)(JLC), 2014 WL 5315074, at *3 (S.D.N.Y. Oct. 17, 2014).

In addition to satisfying the subjective and objective elements, a prisoner must allege a defendant's personal involvement in an Eighth Amendment claim: "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

Here, even viewing the sole factual allegation regarding "John and Jane Doe" in the light most favorable to Felix, a plausible claim cannot be inferred. More specifically, Felix's alleged fear of an assault does not give rise to an Eighth Amendment claim against either Doe. Therefore, it is recommended that the claims against "John and Jane Doe" be DISMISSED.

## VII.   Leave to Amend

Finally, the court must consider whether Felix should be granted leave to amend his Complaint. "A *pro se* complaint 'should not [be] dismiss[ed] without [the court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (first and second alterations in original) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). "Leave to amend may properly be denied if the amendment would be 'futil[e],'" *id.* at 140 (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)), or if Plaintiff has "'repeated[ly] fail[ed] to cure deficiencies'" through prior amendments, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182).

Felix has taken no steps to litigate his claims since the filing of the Complaint. Nevertheless, I conclude that Felix, a *pro se* litigant and a prisoner, should be given the opportunity to replead his § 1983 claims. *See Melendez*, 2010 WL 3748743, at *6 ("Given Plaintiff's *pro se* status, he is granted leave to amend his Complaint to replead his Section 1983 claims against [identified defendants], 'Jane Doe of the MHU' and Lieutenant Jane Doe."). Any amended filing should be titled "Amended Complaint" and should contain all

claims against all parties, as it will supersede the original Complaint in all respects.  The court should require that an Amended Complaint, if any, must be filed within 30 days of its ruling on this Report and Recommendation.  Felix's failure to amend his complaint should result in dismissal of this case with prejudice.

## Conclusion

For these reasons, it is recommended that NWSCF's Motion to Dismiss (Doc. 12) be GRANTED, and Felix's claims against "John and Jane Doe" be DISMISSED.  It is further recommended that, if this Report and Recommendation is adopted, Felix be given 30 days to file an Amended Complaint.  If no timely Amended Complaint is filed, this matter should be closed.

Dated at Burlington, in the District of Vermont, this 21st day of January, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).